### EARLY DETECTION CENTER, PC v NEW YORK LIFE INSURANCE COMPANY

Docket No. 84910. Submitted June 25, 1986, at Detroit. Decided December 29, 1986.

Plaintiffs, Early Detection Center, P.C., Efstathios G. Metropoulos, and others, brought an action in the Wayne Circuit Court against defendants, New York Life Insurance Company, Irene Macko, M.D., and others, advancing claims of defamation, rendering false testimony and conspiracy to do so, malicious prosecution and intentional infliction of emotional distress. Also alleged were counts for loss of consortium by the wife and sons of Efstathios Metropoulos. A motion for summary judgment was granted in favor of the defendants by the trial court, John H. Hausner, J. Plaintiffs subsequently filed a motion to amend their complaint. The proposed amended complaint again sought to advance claims of intentional infliction of emotional distress and malicious prosecution, and contained additional allegations of abuse of process, invasion of the right to privacy and intentional interference with a business relationship. The trial court denied plaintiffs' motion to amend the complaint. Plaintiffs appeal as of right from the order denying their motion to amend. This action resulted from the following factual situation. George Mastrapas filed suit against New York Life in federal court seeking the recovery of benefits which he alleged were due him under an insurance policy. A jury returned a verdict in favor of the insurer. Defendants then filed a suit in federal court against plaintiffs Early Detection Center, P.C., and Efstathios Metropoulos in an effort to recover the

REFERENCES

Am Jur 2d, Abuse of Process §§ 20-22.

Am Jur 2d, Malicious Prosecution §§ 6 et seq.

Am Jur 2d, Pleading §§ 307 et seq.; 319 et seq.

Am Jur 2d, Privacy §§ 3, 43, 44.

Am Jur 2d, Torts §§ 17 et seq.

Liability of third party for interference with prospective contractual relationship between two other parties. 6 ALR4th 195.

See also the annotations in the Index to Annotations under Abuse of Process; Amendment of Pleadings; Emotional Injury; Malicious Prosecution; Privacy.

costs of defending the prior action and certain benefits already paid to Mastrapas. Summary judgment in favor of the plaintiffs was granted as to all counts except that alleging insurance fraud. A judgment of no cause of action was thereafter entered in favor of the plaintiffs as to the insurance fraud count. The instant action was filed by plaintiffs in response to this federal court action.

The Court of Appeals *held:*

There was no error in the denial of plaintiffs' motion for leave to amend. The new theories sought to be added do not state a claim upon which relief could be granted. Further, the refinement of those theories held over from the original complaint does not cure their defects. To grant plaintiffs' motion to amend would be a futile act since each claim could then be summarily dismissed for failure to state a claim upon which relief could be granted.

1. Defendants' filing of their lawsuit was privileged as an assertion of legal rights in a permissible way. Such conduct was not of such an extreme degree as to be characterized as outrageous and atrocious.

2. Plaintiffs failed to allege the element of special damages in their claim for malicious prosecution.

3. The proposed amended complaint did not set forth an actionable claim for abuse of process.

4. No basis for either type of invasion of privacy alleged by plaintiffs, intrusion on plaintiffs' physical solitude or seclusion and putting plaintiffs in a false light, was alleged in the proposed amended complaint.

5. No actionable claim was stated in regard to the claim of intentional interference with a business relationship.

6. A joint venture is not a tortious act for which plaintiffs could obtain damages. Plaintiffs' conspiracy theory failed since no actionable tort theories were stated in the proposed amended complaint.

Affirmed.

1. PLEADING — AMENDMENT OF PLEADINGS.

A motion to amend the pleadings should be freely given when justice so requires; the decision not to allow an amendment is left to the trial court's discretion, but such discretion is not boundless, since the court must find that justice would not be served by the amendment.

2. PLEADING — AMENDMENT OF PLEADINGS.

A motion to amend the pleadings should only be denied for

particularized reasons, one being the futility of the amendment; an amendment is futile where, ignoring the substantive merits of the claim, it is legally insufficient on its face.

3. PLEADING — AMENDMENT OF PLEADINGS.

A decision to deny a motion for leave to amend the pleadings is not error where the pleadings as sought to be amended still fail to state a claim.

4. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

An actor is not liable for intentional infliction of emotional distress where he has done no more than insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.

5. TORTS — MALICIOUS PROSECUTION.

A complainant must prove the following elements in order to succeed under a claim for malicious prosecution: (1) prior proceedings terminated in favor of the present plaintiff; (2) absence of probable cause for those proceedings; (3) malice, defined as a purpose other than that of securing the proper adjudication of the claim; and (4) a special injury that flows directly from the prior proceedings; the special injury element refers to injury to one's fame, injury to one's person or liberty and injury to one's property.

6. TORTS — ABUSE OF PROCESS.

A plaintiff must plead and prove an ulterior purpose and an act in the use of process that is improper in the regular prosecution of a proceeding to recover under a theory of abuse of process; the action lies for the improper use of process after it has been issued, not for maliciously causing it to issue; the pleadings must allege a use of process for a purpose outside of the intended purpose and must allege with specificity an act which itself corroborates the ulterior motive.

7. PRIVACY — TORTS — INVASION OF PRIVACY.

A plaintiff must prove the following to maintain an invasion of privacy claim involving intrusion upon plaintiff's physical solitude or seclusion: (1) an intrusion by defendant; (2) into a matter which plaintiff has a right to keep private; (3) by the use of a method which is objectionable to a reasonable person.

8. PRIVACY — TORTS — INVASION OF PRIVACY.

The tort of false light invasion of privacy requires a communication broadcast to the public in general or publicized to a large number of people which places the injured party in a light

which would be highly offensive to a reasonable person; the actor must have had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

9. TORTS — INTERFERENCE WITH BUSINESS RELATIONSHIP.
   A plaintiff must allege that the interferer did something illegal, unethical or fraudulent in filing a lawsuit in order to succeed under a claim of tortious interference with a business relationship.

10. TORTS — CIVIL CONSPIRACY.
    A claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort.

*William Dobreff,* for plaintiffs.

*Fitzgerald, Young, Peters, Dakmak & Bruno* (by *Neill T. Peters, Stuart J. Snider* and *Robert L. Sharbaugh*), for New York Life Insurance Company.

*Siemion, Huckabay, Bodary, Padilla & Morganti, P.C.* (by *Raymond W. Morganti*), for Irene Macko, M.D.

Before: M. J. KELLY, P.J., and J. H. GILLIS and J. R. ERNST,* JJ.

PER CURIAM. On September 24, 1984, plaintiffs filed suit against defendants, advancing claims of defamation, rendering false testimony and conspiracy to do so, malicious prosecution, and intentional infliction of emotional distress. Also alleged were counts for loss of consortium by plaintiffs Aspasia, John, George, and Peter Metropoulos, the wife and sons of plaintiff Efstathios Metropoulos. A motion for summary judgment was granted in favor of the defendants through an order dated March 1, 1985. Plaintiffs then filed a motion to amend their com-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

plaint, which was denied April 22, 1985. Plaintiffs appeal as of right from the order denying their motion to amend.

On January 10, 1975, George Mastrapas was issued a disability insurance policy from defendant New York Life Insurance Company (NYLIC). Mastrapas began treating with plaintiff Efstathios Metropoulos in July, 1976, due to several alleged medical problems, and in December of that year began receiving disability payments from NYLIC. The insurer continued these payments until August, 1977, at which time Mastrapas was examined by Irene Macko, M.D., at the request of NYLIC. After examining Mastrapas, Dr. Macko concluded that he was not disabled.

Mastrapas filed suit against NYLIC in federal court, through which he sought the recovery of benefits which he alleged were due him under the insurance policy. A jury verdict in favor of NYLIC and against Mastrapas was returned June 25, 1981.

On January 29, 1982, defendants filed suit in federal court against plaintiffs Early Detection Center, P.C., and Efstathios Metropoulos in an effort to recover the costs of defending the prior action and the benefits paid to Mastrapas. Among the allegations advanced were claims of insurance fraud. Prior to trial, summary judgment in favor of plaintiffs was granted as to all counts except that alleging fraud. On September 27, 1983, a judgment of no cause of action was entered in favor of plaintiffs as to the remaining count. The instant action was filed by plaintiffs in response to this federal court suit.

Plaintiffs' original complaint in the instant action advanced claims of defamation, malicious prosecution, the rendering of false testimony by a witness, conspiracy to give false testimony, and

intentional infliction of emotional distress. Defendants moved for summary judgment under GCR 1963, 117.2(1), contending that, even accepting as true all the allegations of fact contained in the complaint, plaintiffs had failed to state a claim upon which relief could be granted. Defendant NYLIC argued that a claim for false testimony does not exist as to parties to prior litigation, that witnesses are given absolute immunity as to any testimony given at trial, even if false, and that there is no civil cause of action for conspiracy to give false testimony in Michigan. As to the defamation claim, NYLIC cited the expiration of the one-year period of limitation. In the malicious prosecution claim, NYLIC argued that plaintiffs could not prove the absence of probable cause, and that they had not alleged special injury. Finally, NYLIC contended that the filing of a lawsuit cannot be considered extreme and outrageous conduct, and thus would not support a claim for intentional infliction of emotional distress. The motion for summary judgment was granted by the trial court.

Plaintiffs subsequently sought to file an amended complaint which again advanced claims of intentional infliction of emotional distress and malicious prosecution, but which contained the additional allegations of abuse of process, invasion of the right to privacy, and intentional interference with a business relationship. Plaintiffs advanced the following arguments in support of their motion for leave to amend. As to the intentional infliction of emotional distress claim, the element of outrageous conduct was established by the defendants' filing of a groundless lawsuit. As to the malicious prosecution claim, special damages were claimed to have been alleged in the amended complaint. In support of the abuse of process count, plaintiffs alleged an ulterior purpose on the

part of the defendants in attempting to intimidate physicians, which plaintiffs claim was shown by the fact that NYLIC filed and proceeded with a lawsuit, the cost of which exceeded any amount NYLIC could hope to recover. Plaintiffs also argued that an intentional interference with a business relationship occurred in that, by suing plaintiffs, defendants drew Metropoulos away from his medical practice and caused damage to his good will and reputation. Plaintiffs were also said to suffer an invasion of the right to privacy because a groundless suit was brought against them.

The trial court denied plaintiffs' motion to amend the complaint, finding that the amendment would be a futile act as to the intentional infliction of emotional distress, malicious prosecution, and abuse of process claims. The court stated that plaintiffs had failed to allege special damages and that, because the federal court denied plaintiffs' motion for summary judgment on the fraud count brought by defendant NYLIC, there must have been probable cause to bring the suit. Further, the trial court held that the amended complaint also failed to state a cause of action for intentional interference with a business relationship because the inability to be at one's office is insufficient to establish such a claim. Finally, the trial court held that the right to privacy amendment was futile because it was reasonable for the defendants to file suit.

Pursuant to GCR 1963, 118.1, a motion to amend the pleadings should be freely given when justice so requires. While the decision not to allow an amendment is left to the trial court's discretion, that discretion is not "boundless," in that the trial court must find that justice would not be served by the amendment. *Ben P Fyke & Sons v Gunter Co*, 390 Mich 649, 658; 213 NW2d 134 (1973). Further, a motion to amend should only be denied for

particularized reasons, one being the futility of the amendment. 390 Mich 656. An amendment is futile where, ignoring the substantive merits of the claim, it is legally insufficient on its face. 390 Mich 660. A decision to deny a motion for leave to amend is not error "where the pleadings as sought to be amended still fail to state a claim." *Cousineau v Ford Motor Co,* 140 Mich App 19, 36; 363 NW2d 721 (1985).

Plaintiffs argue that the trial court erred in denying the motion for leave to amend as to each of the counts contained in the proposed amended complaint. We will consider each of the six theories advanced by plaintiffs seriatim.

I

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Although our Supreme Court has never formally adopted this tort as viable under this state's jurisprudence, *Roberts v Auto-Owners Ins Co,* 422 Mich 594; 374 NW2d 905 (1985), this Court has adopted the definition of intentional infliction of emotional distress found in 1 Restatement Torts, 2d, § 46, p 71, which provides that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." See *Hall v Citizens Ins Co,* 141 Mich App 676, 684; 368 NW2d 250 (1985). The following description of the tort is provided in a comment to this section of the Restatement:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been

characterized by "malice," or a degree of aggrava-
tion which would entitle the plaintiff to punitive
damages for another tort. Liability has been found
only where the conduct has been so outrageous in
character, and so extreme in degree, as to go
beyond all possible bounds of decency, and to be
regarded as atrocious, and utterly intolerable in a
civilized community. Generally, the case is one in
which the recitation of the facts to an average
member of the community would arouse his re-
sentment against the actor, and lead him to ex-
claim, "Outrageous!"

The liability clearly does not extend to mere
insults, indignities, threats, annoyances, petty op-
pressions, or other trivialities. . . . [1 Restatement
Torts, 2d, § 46, comment d, p 73. See also *Roberts,
supra,* pp 602-603.]

The *Roberts* Court also noted that the Restate-
ment recognizes that some conduct, even though
outrageous, may be privileged.

The conduct, although it would otherwise be
extreme and outrageous, may be privileged under
the circumstances. The actor is never liable, for
example, where he has done no more than to insist
upon his legal rights in a permissible way, even
though he is well aware that such insistence is
certain to cause emotional distress. [422 Mich 603,
quoting 1 Restatement Torts, 2d, § 46, comment g,
p 76.]

We believe that the last comment quoted above
closely describes the situation presented here.
Plaintiffs allege that the outrageous conduct on
the part of the defendants was the filing of a
"groundless" suit. However, this amounts to noth-
ing more than an assertion of legal rights in a
permissible way. Furthermore, even if not privi-
leged, we cannot agree that such conduct is "of
such an extreme degree as to be characterized as

outrageous and atrocious." *Hajciar v Crawford & Co,* 142 Mich App 632, 639; 369 NW2d 860 (1985). Rather, by resorting to a court of law for the resolution of its dispute with plaintiffs, defendant NYLIC followed what a civilized society would consider the most appropriate form of conduct.

## II

### MALICIOUS PROSECUTION

In order to succeed under a claim for malicious prosecution, the complainant must prove the following elements:

> 1. Prior proceedings terminated in favor of the present plaintiff;
> 2. Absence of probable cause for those proceedings;
> 3. Malice, defined as a purpose other than that of securing the proper adjudication of the claim; and
> 4. A special injury that flows directly from the prior proceedings. [*Young v Motor City Apartments,* 133 Mich App 671, 675; 350 NW2d 790 (1984).]

The "special injury" element refers to "injury to one's fame (as by a scandalous allegation), injury to one's person or liberty, and injury to one's property." *Friedman v Dozorc,* 412 Mich 1, 33; 312 NW2d 585 (1981). Michigan has not abrogated the requirement that special injury be established. 412 Mich 34.

Plaintiffs argue that there is a statutory form of malicious prosecution in Michigan, separate from the common law as described above, which does not require proof of special damages. We disagree. The statute relied upon, MCL 600.2907; MSA 27A.2907, does not set forth an action for mali-

cious prosecution separate from that provided by case law, but rather imposes a penalty of "treble the amount of the damages and expenses which, by any verdict, shall be found to have been sustained and incurred" by the injured party. We find it inconceivable that in *Friedman, supra,* the Supreme Court would state that special damages must still be established to make out a claim for malicious prosecution in Michigan, yet make no mention of a separate statutory action for malicious prosecution which does not require the same proof. See *Friedman, supra,* p 32.

Reviewing the proposed amendment to their complaint, we agree with the defendants that special damages have not been alleged. The damages asserted by plaintiffs include the monetary effect the prior litigation had on the business, the cost of the litigation, embarrassment and emotional distress, damage to plaintiff Metropoulos' reputation, damage to the goodwill of his business and damage to his physician-patient relationship with Mastrapas. These allegations are very similar to those found insufficient to establish the element of special injury in *Young, supra,* pp 677-678.

Less easily categorized are the following curious allegations:

> (1) violated the doctor's right to fill out disability forms or have his staff fill out forms on behalf of patients when requested pursuant to a medical authorization.
>
> (2) violated the doctor's right to determine and offer an opinion as to the condition of his patients when requested, pursuant to a medical authorization.
>
> (3) violated the doctor's right to treat patients as he deems medically necessary and to impose work restrictions as are medically necessary.

How defendant NYLIC, by instituting an allegedly "groundless" lawsuit, could have interfered with the ability of Dr. Metropoulos and his staff to fill out forms, to offer opinions as to the condition of his patients, or to treat those patients, is beyond the imagination of this Court. Nonetheless, we are confident that these allegations do not amount to a "special injury" as contemplated under the common law followed in Michigan.

### III

#### ABUSE OF PROCESS

To recover under a theory of abuse of process, plaintiffs must plead and prove an ulterior purpose and an act in the use of process that is improper in the regular prosecution of the proceeding. *Young, supra,* p 678; *Friedman, supra,* p 30. The *Friedman* Court stated that there must be some allegations besides the mere issuance of a summons and complaint because the "action for abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue." 412 Mich 31. Further, the pleadings "must allege a use of process for a purpose outside of the intended purpose and must allege with specificity an act which itself corroborates the ulterior motive." *Young,* p 681.

The above-stated standards have not been met here. Plaintiffs have alleged as the irregular acts no more than the filing of a "groundless" suit. This is not sufficient to make out a claim for abuse of process. Further, plaintiffs allege as the ulterior purpose the defendants' desire to intimidate plaintiff Metropoulos and other physicians to keep them from filling out disability forms and to affect plaintiffs' business. However, the ulterior purpose alleged must be more than harassment, defamation,

exposure to excessive litigation costs, or even coercion to discontinue business. *Young,* pp 682-683. Thus, the proposed amended complaint did not set forth an actionable claim for abuse of process.

## IV

### INVASION OF PRIVACY

Plaintiffs alleged two types of invasion of privacy: (1) intrusion on plaintiffs' physical solitude or seclusion; and (2) putting them in a false light. To maintain an action for intrusion, plaintiffs must prove:

> (1) an intrusion by defendant; (2) into a matter which plaintiff has a right to keep private; (3) by the use of a method which is objectionable to the reasonable person. [*Earp v Detroit,* 16 Mich App 271, 276-277; 167 NW2d 841 (1969), cited in *Lewis v Dayton-Hudson Corp,* 128 Mich App 165, 168-169; 339 NW2d 857 (1983).]

False light invasion of privacy requires a communication broadcast to the public in general or publicized to a large number of people which places the injured party in a light which would be highly offensive to a reasonable person. The actor must have had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. *Sawabini v Desenberg,* 143 Mich App 373, 381; 372 NW2d 559 (1985); 3 Restatement Torts, 2d, § 652E, p 394.

The invasion of privacy claimed to have been violated by defendants NYLIC and Dr. Macko was allegedly accomplished by the filing of a groundless suit, Dr. Macko's issuance of a report which indicated that Mastrapas was not disabled, Dr.

Macko's allegedly false representation that she conducted an independent examination of Mastrapas, and various forms of harassment. These allegations show no intrusion into a matter which plaintiffs had a right to keep private. Plaintiffs filled out the disability forms for Mastrapas as part of their medical business. The examination by Dr. Macko was required by the insurance company which paid disability benefits to Mastrapas and, in effect, paid plaintiffs' bill. Further, there was no publication by defendants to the public in general or to a large number of people. Therefore, no basis for either type of invasion of privacy was alleged in the proposed amendment.

## V

### INTENTIONAL INTERFERENCE WITH A BUSINESS RELATIONSHIP

Plaintiffs' allegations with regard to this claim were essentially that, by filing a groundless suit, the defendants interfered with their medical business. However, in order to succeed under a claim of tortious interference with a business relationship, the plaintiffs must allege that the interferer did something illegal, unethical or fraudulent. *Weitting v McFeeters,* 104 Mich App 188, 198; 304 NW2d 525 (1981). There is nothing illegal, unethical or fraudulent in filing a lawsuit, whether groundless or not. No actionable claim was stated under this count.

## VI

### JOINT VENTURE AND CONSPIRACY

Plaintiffs essentially allege here that defendants NYLIC and Dr. Macko conspired together to commit

the torts discussed above. However, a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable, tort. *Cousineau, supra,* pp 36-37. Therefore, since plaintiffs have failed to state any actionable tort theories in their proposed amended complaint, the conspiracy theory must also fail. Further, a "joint venture" is merely "a single enterprise, jointly undertaken, to carry out a single project for profit." *Georges v Ballard,* 20 Mich App 554, 556; 174 NW2d 311 (1969). A joint venture is not a tortious act for which plaintiffs could obtain damages.

We conclude, as did the trial court, that the new theories sought to be added in the proposed second amended complaint do not state a claim upon which relief could be granted. Further, the refinement of those theories held over from the original complaint does not cure the defects found by the trial court. Therefore, to grant plaintiffs leave to file the proposed amended complaint would be a futile act since each claim could then be summarily dismissed for failure to state a claim upon which relief could be granted. MCR 2.116(C)(8). Since "the pleadings as sought to be amended still fail to state a claim," there was no error in the denial of plaintiffs' motion for leave to amend. *Cousineau, supra,* p 36.

Affirmed.