77 F.3d 482
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
April FRONNING and Nancy Diem, Plaintiffs-Appellants,
v.
Jenny JONES, an individual; Jenny Jones, a television show;
WMAQ-TV Chicago; Debra Harwick Glavin; Edward Glavin;
Tom Maguire; Telepictures Productions, Inc.; Jim Paratore;
River Tower Productions, Inc.; David Salzman
Entertainment; Time-Warner Entertainment Co., L.P.A.; and
Warner Brothers, Inc., Defendants-Appellees.
 No. 94-2205.
 United States Court of Appeals, Sixth Circuit.
 Feb. 23, 1996.
 
 Before MARTIN, NORRIS, and MOORE, Circuit Judges.
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 In this diversity case, April Fronning and Nancy Diem appeal the district court's order granting the defendants' motion for summary judgment on invasion of privacy claims. We affirm.
 
 
 2
 * In 1992, the nationally syndicated Jenny Jones talk show aired a program entitled, His Bachelor Party Ruined Our Marriage. The hour-long television broadcast featured two married couples whose relationships had suffered as a result of the hiring of topless dancers to perform at the husbands' bachelor parties. One of the couples was Rick and Shawn Busch.
 
 
 3
 Shawn described her anger at the discovery of photographs of two topless dancers "lap dancing" and otherwise suggestively interacting with Rick during his bachelor party. As Jones, the Busches, and audience members discussed the need for and effect of such parties, edited versions of the photographs in question were intermittently shown to the studio and television audiences. The dancers' names were not mentioned, but their faces were clearly visible in several of the pictures.
 
 
 4
 Appellants Nancy Diem and April Fronning were the dancers in the photographs. Neither had any advance notice that the pictures were to appear on the program; in fact, they first learned of the photographs' existence from friends who had seen the show. They then filed suit in federal district court, alleging three torts under Michigan's "invasion of privacy" rubric: (1) false light publicity, (2) appropriation of another's likeness, and (3) public disclosure of another's private life. The district court granted the defendants' motion for summary judgment on the false light and appropriation claims and, after discovery, granted them summary judgment on the public disclosure count as well. This appeal followed.
 
 II
 
 5
 We review a grant of summary judgment de novo. City Management Corp. v. U.S. Chem. Co., 43 F.3d 244, 250 (6th Cir.1994). All facts and inferences drawn therefrom are considered in the light most favorable to the appellant. Id. Reversal is warranted if the appellant can demonstrate the existence of a genuine issue of material fact, such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
 
 III
 
 6
 The appellants' briefs and oral argument have made it clear that the only issue presented for appeal is the "false light" invasion of privacy claim. A false light invasion of privacy under Michigan law involves (1) the public broadcast (2) of false information (3) that would be highly objectionable to a reasonable person. Duran v. Detroit News, Inc., 504 N.W.2d 715, 720-21 (Mich.Ct.App.1993), appeal denied, 512 N.W.2d 846 (Mich.1994); Early Detection Ctr. v. New York Life Ins. Co., 403 N.W.2d 830, 835 (Mich.Ct.App.1986); 3 Restatement (Second) of Torts § 652 E (1977); see also Baggs v. Eagle-Picher Indus., Inc., 957 F.2d 268, 273 (6th Cir.) (recognizing false light tort under Michigan law), cert. denied, 506 U.S. 975 (1992); Tobin v. Michigan Civil Serv. Comm'n, 331 N.W.2d 184, 189 (Mich.1982) (implicitly recognizing same tort).
 
 
 7
 At the district court level, the appellants argued that the Jenny Jones show falsely implied that they were paid to engage in sexual relations with the guests of honor at bachelor parties. On appeal, however, they have abandoned this approach; their brief nowhere mentions the "imputation of being a prostitute" that was central to their false light claim below. Instead, the appellants concentrate on the contention that the program falsely implied that they ruined the Busches' marriage, which was an alternative argument below.
 
 
 8
 We find that the appellants have failed to establish a genuine issue of fact material to the claim that the program portrayed them as "home wreckers." Although the title of the show was His Bachelor Party Ruined Our Marriage, the Busches--who are still married--appeared good-humored and at ease with each other throughout the broadcast. Mrs. Busch did mention that her discovery of the pictures a few weeks after the wedding upset her, but nothing except the title of the show can be construed to imply that the appellants' performance actually ruined the Busches' wedding or marriage. In fact, Mrs. Busch stated that she intended to remain married. Even viewing this evidence in the light most favorable to the appellants, no reasonable juror could conclude that Fronning and Diem were portrayed as home wreckers. Therefore, because no false information was broadcast, summary judgment for defendants on the false light claim was proper.
 
 
 9
 For the foregoing reasons, we AFFIRM the judgment of the district court.