**In re CHICAGO, MISSOURI & WESTERN RAILWAY COMPANY, an Illinois corporation, EIN 36 3424191, Debtor.**

**Bankruptcy No. 88 B 05141.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Nov. 12, 1991.

Donald Cassling of Jenner & Block, Chicago, Ill., for trustee.

James P. Ginzkey of Hayes, Schneider, Hammer, Miles & Cox, Bloomington, Ill., for Bancmidwest.

## MEMORANDUM OPINION

**JOHN D. SCHWARTZ, Chief Judge.**

This matter is before the court on the motion of Daniel R. Murray, Trustee of the Chicago, Missouri & Western Railway Company ("Trustee") for summary judgment on his objection to a claim filed by Bancmidwest as special administrator of the estate of Roger Stahly ("Bancmidwest") and disallowance of Bancmidwest's claim. For the reasons stated herein, the court, after considering the pleadings, exhibits, affidavits, and memoranda filed, grants the Trustee's motion and disallows Bancmidwest's claim.

### JURISDICTION AND PROCEDURE

This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(B). Accordingly, the court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334. This motion is before the court pursuant to Local Rule 2.33 of the Northern District of Illinois referring bankruptcy cases and proceedings to this court for hearing and determination.

### FACTS AND BACKGROUND

On March 30, 1987, Roger Stahly ("Stahly") died while training to become a train dispatcher for the Chicago, Missouri & Western Railway Company ("CMW"). (Trustee's Memorandum In Support Of His Motion For Summary Judgment As To His Objection To Claim Of Bancmidwest at 4). At the time of Stahly's death, CMW was a shell corporation that owned no rail lines, real property, railroad cars, or any other assets or equipment. (Trustee's Statement Of Uncontested Facts at ¶ 1; Nash Affidavit, ¶ 2; Darling Affidavit, ¶ 3). Furthermore, CMW conducted no rail operations, did not engage in carriage or transport and had no employees. (Trustee's Statement Of Uncontested Facts at ¶ 2; Nash Affidavit, ¶ 3; Darling Affidavit, ¶ 3). CMW did not begin rail operations until April 28, 1987 when it purchased rail assets from the Illinois Central Gulf Railroad Company. (Trustee's Statement of Uncontested Facts at ¶ 2; Nash Affidavit, ¶ 3).

Bancmidwest, as special administrator of Stahly's estate, has filed a claim based on the Federal Employers' Liability Act (45 U.S.C. § 51 et seq.) ("FELA") against CMW's bankruptcy estate seeking damages for Stahly's death. (Trustee's Motion For Summary Judgment As To His Objection To Claim Of Bancmidwest at ¶ 1). On February 15, 1991, the Trustee objected to Bancmidwest's claim. (Trustee's Motion For Summary Judgment at ¶ 2). This court denied the Trustee's objection without prejudice on June 20, 1991, and set a date by which the parties could file motions for summary judgment. (Trustee's Motion For Summary Judgment at ¶ 2). The Trustee filed a motion for summary judgment claiming CMW is not liable to Bancmidwest under FELA as a matter of law because CMW was not a "common carrier by railroad" at the time of Stahly's death.

### DISCUSSION

The Trustee seeks an order for summary judgment on its objection to Bancmidwest's claim against CMW's estate and a disallowance of Bancmidwest's claim. In order to prevail on a motion for summary judgment, the movant must meet the statutory requirements as set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable here by Rule 7056 [1] of the Federal Rules of Bankruptcy Procedure. Rule 56(c) provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admis-

---

1. In addition, a motion for summary judgment must comply with the applicable provisions of Local Rule 12. Rule 12(m) of the General Rules of the United States District Court for the Northern District of Illinois requires a party moving for summary judgment to file a detailed statement of material facts as to which there is no genuine issue. Rule 12(n) in turn requires the party opposing the motion to file a response to the movant's statement and to state any facts the opponent feels require a denial of summary judgment. Failure to file a response to the movant's statement constitutes an admission of all reasonable facts set forth in the movant's statement. *Deberry v. Sherman Hospital Ass'n,* 769 F.Supp. 1030 (N.D.Ill.1991); *Pasant v. Jackson National Life Ins. Co.,* 768 F.Supp. 661 (N.D.Ill.1991).

sions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is appropriate only if there remains no genuine issue of material fact for trial and the movant is entitled to judgment as a matter of law. *Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1339 (7th Cir. 1985). If a non-moving party fails to establish an element essential to the case on which the non-moving party has the burden of proof, summary judgment is appropriate. *Samuels v. Wilder,* 871 F.2d 1346, 1349 (7th Cir.1989). The facts alleged by the movant must be such that the court can reasonably conclude by a preponderance of the evidence that the movant is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *In re Calisoff,* 92 B.R. 346, 350–51 (Bankr.N.D.Ill.1988).

Bancmidwest bases its claim against CMW's estate on § 1 of FELA. Section 51 provides in relevant part that:

> Every *common carrier by railroad while engaging in commerce* between any of the several States or Territories, ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce or, in the case of the death of such employee, to his or her personal representative, ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier ...

(Emphasis supplied); 45 U.S.C. § 51. As an initial matter, § 1 of FELA requires Bancmidwest to prove that CMW was a "common carrier by railroad" that was engaging in commerce at the time of Stahly's death. The Trustee asserts that he is entitled to summary judgment because CMW was not a common carrier by railroad en-

gaging in commerce when Stahly died on March 30, 1987 and, therefore, Bancmidwest has failed to prove the initial element of § 1 of FELA.

According to the Supreme Court, a "common carrier by railroad" under FELA is:

> ... *one who operates a railroad as a means of carrying for the public,—that is to say, a railroad company operating as a common carrier.* This view not only is in accord with the ordinary acceptation of the words, but is enforced by the mention of cars, engines, track, roadbed and other property pertaining to a going railroad ...

(Emphasis supplied) *Wells Fargo & Co. v. Taylor,* 254 U.S. 175, 187–88, 41 S.Ct. 93, 98, 65 L.Ed. 205 (1920). The *Wells Fargo* definition of a "common carrier by railroad" was elaborated on in *Lone Star Steel Co. v. McGee* where the Fifth Circuit required that the following four factors be met before an entity can be considered a "common carrier by railroad":

> First—actual performance of rail service, second—the service being performed is part of the total rail service contracted for by a member of the public, third—the entity is performing as part of a system of interstate rail transportation by virtue of common ownership between itself and a railroad, and hence such entity is deemed to be holding itself out to the public, and forth—remuneration for the services performed is received in some manner, such as a fixed charge from a railroad or by a percentage of the profits from a railroad.

*Lone Star Steel Co. v. McGee,* 380 F.2d 640, 647 (5th Cir.1967), *cert. denied,* 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 471 (1967).

The undisputed facts in this case are that as of March 30, 1987, the date of Stahly's death, CMW owned no assets, conducted no rail operations and employed no personnel.[2] Given these facts, CMW can not be con-

---

**2.** The Trustee's Statement of Uncontested Facts is deemed admitted by Bancmidwest because it failed to file a response to the Trustee's statement as required by Local Rule 12. Even if this court were to overlook the requirements of Local Rule 12, none of Bancmidwest's pleadings allege that CMW owned any assets or carried on any operations as of March 30, 1987. Bancmidwest argues that despite CMW's lack of assets or operations, CMW is liable under FELA because it falls within the definition of a common carrier as defined by FELA.

sidered a "common carrier by railroad" engaging in interstate commerce under any definition. Under the *Wells Fargo* definition CMW is not a "common carrier by railroad" because it did not operate "... a railroad as a means of carrying for the public...." As of March 30, 1987, operating as a railroad was a physical impossibility for CMW because it owned no assets and employed no personnel.

Bancmidwest's contention that CMW is a "common carrier by railroad" fairs no better under the Fifth Circuit's more detailed test. To pass the Fifth Circuit's test of a "common carrier by railroad," Bancmidwest must prove that CMW met each of the test's four elements as of March 30, 1987. *Mahfood v. Continental Grain Co.*, 718 F.2d 779, 782 (5th Cir.1983). Each of the test's four elements, however, depend to some extent on a showing that the entity in question performed rail services. Here, because it is undisputed that CMW performed no rail services as of March 30, 1987, Bancmidwest can not prove any of the test's four elements. Therefore, CMW was not a "common carrier by railroad" when Stahly died and it can not be held liable for Stahly's death under FELA.

In opposition, Bancmidwest argues that CMW is liable for Stahly's death under FELA because the statute defines "common carrier" as including "receivers or other persons or corporations charged with the duty of the management and operation of the business of a common carrier." 45 U.S.C. § 57. In support of this position, Bancmidwest cites *Eddings v. Collins Pine Co.*, 140 F.Supp. 622 (N.D.Cal.1956) in which a lumber company, operated a railroad owned by its subsidiary. *Eddings* at 624–25. The court cited § 7 of FELA in holding that liability under FELA can not be avoided by splitting ownership of assets and operation of the railroad between a parent and its subsidiary. *Eddings* at 627–29.

*Eddings* is distinguishable from the present case, however. Section 7 of FELA exists so that railroad companies can not transfer their assets to holding companies or other entities in an attempt to avoid liability under FELA as occurred in *Eddings*. CMW's situation is different because there was no split of assets and operation between CMW and any parent, subsidiary or related company as of March 30, 1987. Such a split to avoid FELA liability was a physical impossibility at the time of Stahly's death because CMW did not own assets or carry on any operations that it could split among entities. Thus, even under the *Eddings* interpretation of a "common carrier," CMW was not subject to FELA on March 30, 1987.

As of Stahly's death on March 30, 1987, CMW was merely a shell corporation. CMW can not be held liable under FELA as of March 30, 1987 on the basis that it planned to acquire assets and begin rail operations at some time in the future. CMW's subsequent status as a railroad has no bearing on its status as of March 30, 1987. This court finds that CMW was not a "common carrier by railroad" as of March 30, 1987 when Stahly died and CMW's bankruptcy estate is not liable to Bancmidwest under FELA.

## CONCLUSION

For the reasons stated above, the Trustee's motion for summary judgment on his objection to Bancmidwest's claim is granted and Bancmidwest's claim is disallowed with each of the parties bearing their own costs.

